IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| MICHAEL ADAM BOOTH, | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | NO. 3:17-cv-00755 |
| NISSAN NORTH AMERICA, INC., | ) ) | JUDGE CAMPBELL MAGISTRATE JUDGE FRENSLEY |
| Defendant. | ) | |

## MEMORANDUM

### I. Introduction

Pending before the Court is Defendant's Motion for Summary Judgment (Doc. No. 25). For the reasons set forth below, Defendant's Motion for Summary Judgment (Doc. No. 25) is **GRANTED**, and this action is **DISMISSED**.

### II. Factual and Procedural Background

Plaintiff Michael Adam Booth, an employee of Defendant Nissan North America, Inc. ("Nissan"), has brought this action asserting claims for violations of the Americans With Disabilities Act, 42 U.S.C. §§ 12101, *et seq.* ("ADA"), and for workers' compensation retaliation under state law. (Doc No. 1). Plaintiff injured his neck at work in 2004, resulting in work restrictions Plaintiff acknowledges were accommodated by Nissan until the events giving rise to this lawsuit. (*Id.* ¶ 12; Plaintiff's Response to Statement of Material Facts in Support of Defendant's Motion for Summary Judgment ¶¶ 8, 9 (Doc. No. 32) (hereinafter "Plaintiff's Response to Facts")).

In 2014, Plaintiff transferred to a "zone" on the "Door Line," a part of Nissan's vehicle-production process. (*Id.* ¶ 3). In September or October, 2015, Plaintiff requested a transfer to a vacant position in "Material Handling." (*Id.* ¶¶ 10-13; Plaintiff's Deposition, at 16-17, 34 (Doc.

No. 25-1)). Defendant denied the request in November, 2015, advising Plaintiff the new job was beyond his work restrictions. (*Id.*).

In September, 2016, Randy Wiseman became the supervisor of the Door Line and began implementing Nissan's transition of the zone where Plaintiff worked from a two-job rotation to a four-job rotation. (Declaration of Randy Wiseman, ¶¶ 2-3 (Doc. No. 28)). When he was told Defendant would be implementing a four-job rotation for his zone, Plaintiff became concerned that the two new jobs Defendant intended to add would be outside his work restrictions. (Plaintiff's Deposition, at 34-35, 136; Plaintiff's Response to Facts ¶ 14). Given Plaintiff's concern, Defendant asked its third-party medical provider, Progressive Health, to analyze the functions of the jobs on the Door Line to see if any four-job rotations would be compatible with Plaintiff's original 2005 work restrictions. (Plaintiff's Response to Facts ¶¶ 17-19). In a September, 2016 report, Progressive Health concluded there were no four-job rotations on the Door Line compatible with Plaintiff's original 2005 restrictions. (*Id.*; Doc. No. 28-1).

Given the results of the report, Plaintiff's supervisors requested that Plaintiff have a physician determine whether the restrictions imposed 10 years earlier remained applicable. (Plaintiff's Deposition, at 57-58, 99-101). For approximately three-to-four months in late 2016 to early 2017, Plaintiff's supervisors asked him at various times about the status of his restrictions and whether they had been reviewed by a physician. (*Id.*, at 98, 201-02, 203, 212-15, 220-21, 288). According to Plaintiff, his supervisors repeatedly pressured him to arrange for the removal of his work restrictions in order to keep his job, and this pressure amounted to harassment. (*Id.*, at 125-26). Plaintiff contends the harassment was triggered by his earlier request to transfer to Material Handling, which, according to Plaintiff, would have "bumped out" relatives of Nissan's "managers and HR people." (*Id.*, at 231-24, 245, 313).

2

In January, 2017, Plaintiff's physician revised his work restrictions and approved him for a full four-job rotation. (*Id.*, at 136-37; Doc. No. 25-4, at 11; Doc. No. 31-5, at 4). Plaintiff continues to work within his restrictions, currently performing a three-job rotation on the Door Line. (Plaintiff's Response to Facts ¶¶ 1, 2, 25-26; Plaintiff's Deposition, at 128-29, 137).

III. <u>Analysis</u>

A. <u>The Standards Governing Motions For Summary Judgment</u>

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Supreme Court has construed Rule 56 to "mandate[] the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v.* Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

In considering a motion for summary judgment, a court must draw all reasonable inferences in favor of the nonmoving party. *See, e.g., Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587-88, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Shreve v. Franklin County, Ohio,* 743 F.3d 126, 132 (6th Cir. 2014). The court does not, however, make credibility determinations, weigh the evidence, or determine the truth of the matter. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

In order to defeat the motion, the nonmoving party must provide evidence, beyond the pleadings, upon which a reasonable jury could return a verdict in its favor. *Celotex Corp.*, 477 U.S. at 324; *Shreve,* 743 F.3d at 132. Ultimately, the court is to determine "whether the evidence

presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52.

B. <u>Denial of Transfer to Material Handling</u>

Plaintiff claims Defendant violated the ADA when it denied his request to transfer from the Door Line to a job in Material Handling. The ADA prohibits discrimination against "a qualified individual on the basis of disability" with regard to hiring, compensation, discharge, and other terms, conditions, and privileges of employment. 42 U.S.C. § 12112(a). A "qualified individual" is "an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). In order to establish a prima facie case of discrimination under the ADA, a plaintiff must show: (1) he is disabled; (2) he is otherwise qualified to perform the essential functions of a position, with or without accommodation; and (3) he suffered an adverse employment action because of his disability. *Demyanovich v. Cadon Plating & Coatings, L.L.C.*, 747 F.3d 419, 433 (6th Cir. 2014); *Perry v. American Red Cross Blood Services*, 651 Fed. Appx. 317 (6th Cir. 2016).

Defendant argues Plaintiff cannot establish the first and third elements. Regarding the fourth element, Defendant argues denial of Plaintiff's request for the Material Handling job did not constitute an "adverse employment action" because transfer to that job would have been a lateral transfer rather than a promotion. An "adverse employment action" is one that results in "a materially adverse change in the terms and conditions of [a plaintiff's] employment." *Spees v. James Marine, Inc.*, 617 F.3d 380, 391 (6th Cir. 2010). Adverse employment actions "are typically marked by a 'significant change in employment status,' including 'hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a

significant change in benefits.'" *Id.* With regard to denial of requests to transfer, a plaintiff generally must show the transfer he was denied involved a change in wages or salary, a less distinguished title, a material loss of benefits, or significantly diminished material responsibilities. *Momah v. Dominguez*, 230 Fed. Appx. 114, 123 (6th Cir. 2007). "[A] purely lateral transfer or denial of the same, which by definition results in no decrease in title, pay or benefits, is not an adverse employment for discrimination purposes." *Id.* The plaintiff's "'subjective impressions as to the desirability of one position over another are not relevant' in determining whether the employee suffered an adverse employment action." *Id.* (quoting *Policastro v. Northwest Airlines, Inc.*, 297 F.3d 535, 539 (6th Cir. 2002)).

Plaintiff admits the Material Handling job had the same rate of pay, but argues it was not a lateral transfer because: (1) job openings in Material Handling are rare and require a level of seniority; and (2) Material Handling jobs, in Plaintiff's opinion, involve less stress on one's body. (Plaintiff's Response to Facts ¶ 10). The scarcity of job openings, and Plaintiff's subjective impressions about the desirability of the job, however, are insufficient to show a transfer from the Door Line to Material Handling was other than a purely lateral transfer. Plaintiff has not alleged or presented any evidence indicating the Material Handling job involved a change in pay or benefits, or other change usually associated with a promotion.[1] Therefore, Plaintiff has failed to make a showing sufficient to withstand summary judgment as to this essential element of his

---

[1] Plaintiff cites *Deleon v. Kalamazoo County Road Com'n*, 739 F.3d 914, 919 (6th Cir. 2014) for the proposition that a plaintiff may show a transfer constitutes an "adverse employment action" even in the absence of a demotion or pay decrease if the particular circumstances of the new job rise to some level of "objective intolerability." This proposition does not support Plaintiff's claim, however, because he has not suggested his position on the Door Line was objectively intolerable.

claim.[2] Accordingly, Defendant is entitled to summary judgment on Plaintiff's failure to promote claim.

Plaintiff also appears to argue Nissan failed to "accommodate" his disability through a transfer to the Material Handling job. Discrimination, under the ADA, includes the failure to make "reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability . . . unless . . . the accommodation would impose an undue hardship on the operation of the business of the covered entity." 42 U.S.C. § 12112(b)(5)(A). A "reasonable accommodation" includes "job restructuring, part-time or modified work schedules, reassignment to a vacant position, acquisition or modification of equipment or devices . . . [or] other similar accommodations for individuals with disabilities." 42 U.S.C. § 12111(9).

The plaintiff bears the initial burden of proposing an accommodation and showing it is objectively reasonable. *Talley v. Family Dollar Stores of Ohio, Inc.*, 542 F.3d 1099, 1108 (6th Cir. 2008). The employer then bears the burden of persuasion to show the accommodation would impose an undue hardship. *Id.* An employee "cannot force her employer to provide a specific accommodation if the employer offers another reasonable accommodation." *Id.* If an employee rejects a reasonable accommodation, "the individual is no longer a 'qualified individual with a disability.'" *Id.*

Plaintiff admits the position he held at the time he requested transfer was a reasonable accommodation of his work restrictions by Nissan. (Plaintiff's Response to Facts, at ¶ 9; Complaint, at ¶ 12 (Doc. No. 1)). Therefore, Plaintiff cannot show Defendant failed to reasonably accommodate his disability. As the Sixth Circuit has explained, Plaintiff cannot insist on a specific accommodation – a job in Material Handling – when his current job is itself a

---

[2] Consequently, the Court need not consider whether Plaintiff meets the first element.

reasonable accommodation of his disability. *See, e.g., Hedrick v. W. Reserve Care Sys.*, 355 F.3d 444, 457 (6th Cir. 2004) (". . . an employee cannot make his employer provide a specific accommodation if another reasonable accommodation is instead provided."); *Bush v. Compass Grp. USA, Inc.,* 683 Fed. Appx. 440, 450 (6th Cir. 2017). Thus, Defendant is entitled to summary judgment on Plaintiff's failure to accommodate claim.

C. Reevaluation of Job Duties

Plaintiff alleges that, for several months, Nissan engaged in a campaign of harassment, creating a hostile work environment, by pressuring him to eliminate his work restrictions in order to keep his job. To establish a claim of hostile work environment based on disability, a plaintiff must demonstrate: (1) he was disabled; (2) he was subject to unwelcome harassment; (3) the harassment was based on his disability; (4) the harassment unreasonably interfered with his work performance; and (5) the defendant either knew or should have known about the harassment and failed to take corrective measures. *Trepka v. Bd. of Educ.*, 28 Fed. Appx. 455, 461 (6th Cir. 2002). To establish a hostile work environment, the plaintiff "must show conduct that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and [to] create an abusive working environment.'" *Id.* (quoting *Harris v. Forklift Systems, Inc.,* 510 U.S. 17, 21, 114 S. Ct. 367, 126 L.Ed.2d 295 (1993)). "The standard has both an objective and a subjective component: the environment must be one 'that a reasonable person would find hostile or abusive,' and the plaintiff must 'subjectively perceive the environment to be abusive.'" *Goller v. Ohio Dep't of Rehab. & Correction*, 285 Fed. Appx. 250, 259 (6th Cir. 2008) (quoting *Harris*, 510 U.S. at 21–22)). Conduct that is "merely offensive" will not suffice to support a hostile work environment claim. *Id.*

Defendant argues it did not "harass" Plaintiff by requesting he update his 2005 work restrictions to determine whether he could continue performing his current job, which was transitioning from a two-job rotation to a four-job rotation. In that regard, the ADA permits an employer to "make inquiries into the ability of an employee to perform job-related functions." 42 U.S.C. § 12112(d)(4)(B); *see also* 42 U.S.C. § 12112(d)(4)(A) (an employer "shall not require a medical examination and shall not make inquiries of an employee as to whether such employee is an individual with a disability or as to the nature or severity of the disability, *unless such examination or inquiry is shown to be job-related and consistent with business necessity*."); *Templeton v. Neodata Services, Inc.*, 162 F.3d 617, 619 (10th Cir. 1998) (employer's request for updated medical information was reasonable in light of doctor's earlier letter questioning employee's ability to return to work). Indeed, an employer is required to engage in an "interactive process" with an employee to identify the precise limitations resulting from a disability and potential reasonable accommodations that could overcome those limitations. *See, e.g., Rorrer v. City of Stow*, 743 F.3d 1025, 1040 (6th Cir. 2014). If this process fails to lead to a reasonable accommodation of the employee's limitations, responsibility lies with the party that caused the breakdown. *Id.*

To support his hostile work environment claim, Plaintiff relies on his own testimony that his supervisors "pressured" him to get his work restrictions changed so he would be able to continue working. (*Id.,* at 125-26, 152-53, 160, 183). Plaintiff testified he felt harassed because his supervisors asked him once a week, and sometimes more than once a week, over a three-to-four month period, from October, 2016 to January, 2017, if he had seen a physician to obtain a current assessment of his work restrictions. (*Id.*) In addition, Plaintiff testified he felt he was being harassed because a temporary supervisor "constantly" watched him perform his work in

8

January 2018. (Plaintiff's Deposition, at 25-27, 224-26)).[3] Plaintiff also cites an exhibit containing four emails exchanged by Senior Manager Marc LaCroix with other employees relating to Plaintiff's work restrictions. (Plaintiff's Exhibit Eight (Doc. No. 31-5, at 9-11)). The emails essentially document conversations with Plaintiff regarding the need to review his current work restrictions to determine whether he would be medically cleared to perform his current job or other jobs in the plant. (*Id.*) [4]

---

[3] Plaintiff also testified he was never written up or verbally counseled or disciplined by this supervisor, and understood that watching to see if technicians perform their jobs correctly is part of a supervisor's job. (*Id.*).

[4] The first email in the exhibit is dated November 2, 2016, and was sent to Trish Howerton at Premise Health, and Debbie Nelson, Manager of Medical Management at Nissan. In it, Mr. LaCroix states:

> Adam Booth met with me today and informed me that his prior workman's comp doctor is no longer in practice. Due to his permanent restrictions not clearing him to run any jobs in the plant he was advised of the steps he would need to take in order to possibly improve his current standings in regards to his restrictions. He was advised to visit Medical and speak with a case manager about his medical records and setting up and [sic] appointment with his attending physician. With his original Dr. no longer in practice how do we proceed with getting him set up to be seen by another Dr. and evaluated?

(Doc. No. 31-5, at 11). The second email is Ms. Nelson's response to Mr. LaCroix, sent the same day:

> It was my understanding he was informed that he could:
>
> 1. See his PCP, under group health, if PCP was willing;
> 2. Ask Dr. Hazlewood, who is treating him for an open WC case, if he will see him, under his group health plan, to review/address the permanent restrictions.
>
> Additionally I understand he was told he should come to medical, sign a waiver/consent form, and request his medical records to take to whatever MD apt. he might schedule.

(*Id.*, at 10).

9

Assuming Plaintiff could prove the other elements required to establish a claim for hostile work environment based on disability, Plaintiff's allegations of harassment fall far short of satisfying the second and fourth elements. The conduct Plaintiff cites to support his claim was not objectively harassing or even unreasonable. Rather, contrary to Plaintiff's characterization of the evidence, the documents show a reasonable attempt by Nissan to ensure Plaintiff would retain his employment after a change in the production process in the zone where he worked.[5]

---

The next email in the exhibit is from Mr. LaCroix to Debbie Nelson, Gina Baio, Bill Slagle, and Rufus McAdoo, all Nissan employees, and is dated January 27, 2017, over two months later. In the email, Mr. LaCroix states:

> See the attached email with the most recent details for Adam's medical review status. We need to discuss some deadlines that he has to meet as he is continuing to drag out his requirement to meet with the Dr. We have continued to let him work in his current pod, but we can't continue to do that if he doesn't get his Perm Restrictions modified to clear him for duty.

(*Id.*, at 9). The final email in the exhibit is a response from Mr. Slagle to Mr. LaCroix sent later that day:

> Before the Holidays when we met with him it was clear that we were giving him ample time to make an appointment. He did that and had an evaluation with Hazelwood on 12/29. This follow-up appointment with Hazelwood on 1/31 in my opinion, is still on track with what we asked him to do. I think he needs to be refreshed on the urgency and need for the medical clinic to assess the findings of the doctor and make a determination regarding his current restrictions.
>
> Based on his wife's conflicting appointment on this same day, I think it is appropriate to give him 2 weeks from Monday 1/30 to reschedule the 1/31 appointment with Hazelwood.

(*Id.*)

---

[5] Plaintiff has cited no authority suggesting Nissan was prohibited by the ADA from changing its production processes. Nor has Plaintiff cited any evidence supporting his suggestion that Nissan's stated intention to change its production process was a ruse to "push out the physically disabled." (Doc. No. 31, at 9).

10

During the three-to-four month period in which Plaintiff's supervisors waited for him to obtain updated restrictions,[6] there is no evidence Nissan eliminated his current position, or attempted to move him to a more difficult position. There is also nothing in the emails cited by Plaintiff (assuming their admissibility) suggesting his supervisors harassed him during this period. As for Plaintiff's complaints of being constantly watched by a temporary supervisor at a later time, Plaintiff has not shown the behavior went beyond that reasonably expected of a supervisor. Plaintiff has pointed to no evidence that he was ridiculed, insulted, intimidated, or abused because of his disability, or otherwise. Even if the Court were to assume Nissan's conduct was intimidating, however, it does not rise to the level of sufficient severity to have altered Plaintiff's working conditions, as is required to establish a hostile work environment claim. *See, e.g., Trepka,* 28 Fed. Appx. at 461 (supervisor's contentious oral confrontation involving yelling and stern words about plaintiff's ability to walk and expressing skepticism about his condition did not create a hostile work environment); *Goller*, 285 Fed. Appx. at 259 (supervisor's derogatory name calling that did not interfere with her work performance held to be insufficient to establish hostile work environment). Therefore, Plaintiff has failed to make a showing sufficient to withstand summary judgment as to two of the essential elements of his hostile work environment claim. Accordingly, Defendant is entitled to summary judgment on this claim.

D. Workers' Compensation Retaliation

---

[6] With regard to the updated restrictions, the Court notes that Plaintiff has cited no factual support for his suggestion that the physician "went against what was best for Mr. Booth" in changing his work restrictions. (Doc. No. 31, at 10).

Plaintiff also claims Defendant violated Tennessee law by retaliating against him for filing a workers' compensation claim in 2004. In order to establish a prima facie case for workers' compensation retaliation, a plaintiff must show: (1) he was an employee of the employer at the time of the injury; (2) the employee filed a workers' compensation claim against the employer; (3) the employer terminated the employee; and (4) the workers' compensation claim played a substantial role in the employer's decision to terminate the employee. *Alexander v. Kellogg USA, Inc.,* 674 Fed. Appx. 496, 501 (6th Cir. 2017) (citing *Yardley v. Hosp. Housekeeping Sys., LLC,* 470 S.W.3d 800, 805 (Tenn. 2015)).

Defendant argues Plaintiff cannot establish the third element – termination. Plaintiff admits he has not been terminated and is working full days at Nissan within his restrictions. (Plaintiff's Response to Facts ¶ 36). Plaintiff has not cited any authority extending a workers' compensation retaliation claim to conduct short of termination. Accordingly, Defendant is entitled to summary judgment on Plaintiff's workers' compensation retaliation claim.[7]

## IV. Conclusion

For the reasons discussed above, the Court grants summary judgment to Defendant on all claims, and this action is dismissed.

It is so **ORDERED**.

_____
WILLIAM L. CAMPBELL, JR.
UNITED STATES DISTRICT JUDGE

---

[7] Given the Court's conclusion that Plaintiff has failed to make a sufficient showing to withstand summary judgment on his claims, it is unnecessary to consider Defendant's arguments regarding the statute of limitations and other defenses to those claims.